Good morning. Good morning. The issue before the court this morning is whether substantial evidence supports the I.J.'s adverse credibility finding. It's significant to note at the outset that neither the I.J. or the board, nor the board, question the substance of Petitioner's claim of persecution in India. His testimony was detailed, plausible, and credible, and consistent with his declaration. And additionally, he provided supporting affidavits, two of which were quite detailed as to when he was arrested and confirmed that he suffered mistreatment at the hands of the police. But the odd thing is that none of them, nor his original application, suggested that he was going back and forth from India to the United States at that time. They all – I mean, if you read them, you would think and it would seem a lot more logical that he was in Italy, in India, not that he was going back and forth. But we know he was, because we have the travel documents, so there's something peculiar about the whole situation. Holder, if I remember the record correctly, I believe his asylum application was signed in 1996. The merits hearing, I believe, was in 1996. I'm sorry? Can you speak up a little, please? Yes. His asylum application, I believe, was signed in 2006, rather. Merits hearing was in 2009. And I believe he addressed that question on cross-examination as to why the 589 did not mention trips back and forth. I believe his explanation was that nobody asked and nobody followed up with questioning about whether or not he had provided that information. But, again, his simple response was nobody had asked him. But he did, without prompting at the merits hearing, relate that he traveled back and forth to India. And I believe that the IJ and the Board only focused on three collateral matters here, not relating to the heart of the claim. The first collateral matter that they focused on was the children's dates of birth and how that squared, if you will, with his trips back and forth. I want to back that. I understand that the IJ or the government lawyer did not specifically ask him. But his lawyer was told twice, as I read the transcript, that the IJ was very concerned about this. And he never cleared it up. Yes. My primary argument was that, unfortunately, neither the IJ nor the department questioned the Petitioner. Well, does that matter if they told his lawyer that this was their credibility concern and he never responded to it? He could have. I mean, the lawyer could have asked him and didn't. They knew what the problem was. Well, I wasn't at the merits hearing. I didn't appear on Petitioner's behalf. But I would presume that my associate considered it a tactical consideration or a tactical strategic consideration. Yes, because he didn't have a good answer. If he had a good answer, he would have given one. I mean, right? Granted, Your Honor. But also, I believe the burden is on the department to, on cross-examination to follow up on that. If that's a source of impeachment evidence, potential impeachment evidence, that neither the IJ nor the department knew. Well, I understand that. But that's not the due process problem. The due process problem was did he have notice that this could have been a problem and a chance to respond, and he did. He didn't, only because he wasn't asked about it and he wasn't provided a reasonable opportunity to. But it's a little – that's what I'm saying. Twice, twice at two different hearings, the IJ said to the lawyer, I'm really – this really is inexplicable to me. So he did have a chance. Yes, but again, I would assume that my associate's not following up on questioning about the dates of birth was a tactical consideration. But what do you mean by that? Tactical, because he didn't have a good answer. So how does it help anything? He may not have. We don't know, because the Petitioner wasn't directly questioned. We don't know what his answer would have been, frankly. Perhaps his lawyer did. Perhaps. And I don't mean to evade your question, Your Honor. That's my best consideration about why it wasn't. I mean, the whole thing is very strange, because he – his – as I understand now, he's saying he was – came in 1981 here. He left in 1984. He went to India. Then he didn't go back to India until 1991, right? Correct. But he also, at other points, seemed to be saying he was in India in 89. In fact, how could he join this party he said he joined when he wasn't there? And he also said that he also had a passport stamped in India in 1989. He says, wait, maybe he sent it back and forth. That's possible. But he could – I mean, he said he first joined this party in 1989, as nobody said, but he also wasn't there. Again, and I apologize if it seems that it's not a totally responsive answer. He wasn't questioned about it. These are all – He was questioned about that. Yes. He was specifically questioned about that. And what explanation did he have for the stamp in 1989? He was specifically asked that question. Yes, Your Honor, that's correct. He – I believe on direct examination early on, he was asked when he joined the Akali Dalmaan, and I believe he said 89, and then the passport issue came up later on. Unfortunately, the passport that's in the record are only – consists, I think, of only three pages or excerpts of the passport. He didn't have the original passport. He provided an explanation about that. He didn't have a full copy of the passport. We don't know what those dates in the passport signify, whether it was a ministerial act by the Government of India or, you know, what the reasoning was, why those dates were in the passport. He did provide a plausible explanation that he believes – and this is referring to events that happened 20 years previous – his best recollection was that he might have sent it to India for renewal, and that was his answer to that inquiry. Did he – there was some suggestion, somehow or other, he had some kind of status in the United States in the early 90s. Yes. Right? Because he was going back and forth, getting parole, et cetera. Yes. The suggestion is that he was getting – he applied for amnesty, which would have required him to be here in the 80s, right? I would assume so, yes. Because there was a time period that you had to be here. Yes. Go ahead. Well, I believe he – his recollection was that he was issued a temporary amnesty card or resident card. Right. And there was a time period – I mean, you had almost alleged that you were here for some number of years. Yes. Back from, what, 86 or something like that? I don't – I don't recall specifically what the required time period was, but I believe that there was – that there is some requirement that you had to have been present within the – in the United States within that time frame. Specifically, I'm not – I'm not sure. I can't speak to that, unfortunately. But I believe that the I.J. only focused on these collateral matters that don't go to the heart of the claim. At first glance, they do appear to be material inconsistencies. But unfortunately, these inconsistencies, or these seeming inconsistencies, rather, were not – Petitioner was not questioned on cross-examination or questioned by the I.J. as to these matters in – in the form of how do you explain that, for instance, the dates of birth of two of your children don't seem to coincide with your – with your claim that you were out of India at that time. So if they had phrased it to that – to Petitioner that way, it would have given – it would have given Petitioner a reasonable opportunity to answer the question. And unfortunately, the record is devoid of that evidence, and we don't know what his answer would have been. So the – for the stamp in 1989, he was asked his explanation, and he said, I have no answer. Yes. He did say that, but I believe the page previous to that in the transcript, he did volunteer that perhaps he had sent the passport back to you. Maybe I might have. I might have sent it back to you. Maybe I might have. Yes. Yes, Your Honor. That was his best recollection. And we're talking about events that happened 20 years previous. So it's – it's reasonable to – to assume that his – his memory was not crystalline or crystal clear as to events that happened 20 years previous. And if there are no further questions, if I could reserve a vote. Okay. Thank you. We'll give you a minute in rebuttal. May it please the Court, my name is Michelle Sarko. I'm here representing the Department of Justice in this matter. The issue here is whether there is substantial evidence to support the agency's adverse credibility finding. I submit that the evidence here does not compel a different conclusion than that reached by the Board. There was numerous inconsistencies on dates given by the Petitioner, and with regard to the evidence presented, there was differences not only with regard to when he was – when he claimed to be in – in India, and whether those corresponded to the dates when he claimed to have been persecuted in India. Because of these conflicting dates, it goes to the heart of the claim whether he was even actually there when he claims to have been persecuted. So the numerous inconsistencies on dates are not only with regard to where he was – or when he came and went from the United States, but also their conflicts on the birth dates of his children and the various evidence given on all three children. But he actually – he was not, in fact, asked. I mean, as I noted, his lawyer was told that this was troubling, but he was never asked. The lawyer was given notice in that – that this was going to be an issue, and he – and there was subsequent evidence that he was able to put in, and he had additional time to question and clarify this for the immigration judge. He did not. It was specifically noted that this was an issue by the immigration judge. I'm sorry. Specifically, pages of the administrative record 189 and 190. I mean, what's very odd about this is these dates – I mean, the only theory I've been able to come up with, as far as an asylum claim is, there's no benefit to him from being – not having been in India in the 80s, right? I mean, the only possibility is – which is why I asked the question before, is maybe he had some other tie, but it's not in the record – said that he was actually here in the 80s for purposes of asylum. But we don't have any record of that. No, we don't have a record of that. Part of the problem was he was using different A-numbers, and so I'm not sure that they actually had the second A-file for the other – on the other – well, the other A-file. So – but what was in this A-file, which most of the – this was the A-number he was mostly using during the time that he was proceeding on applications for benefits in his room of proceedings. He also used a variety of different names. He used Melinder's or – But my point is that, as to the asylum issue, the things that were found to be inconsistencies really had nothing to do with the asylum issues. Well, it has to do with whether he was actually there or not. I mean, in India. Why? It didn't have to do with whether he was in India. I mean, it has to do with whether he was in India in the 80s, but it doesn't have to do with whether he was in India in the 90s. Well, no, there were – I think there were also inconsistencies. I think all of them have to do with whether he was in India in the 80s, i.e.,  in 1985, and whether he had a stamp in 1989. None of them have to do with whether he was in India in the 90s. Sorry. I'm looking. Not one. Well, let's see. Hold on. There was – well, there was conflicting testimony about whether – or conflicting evidence about his whereabouts in 1981 and May of 1992. Okay. But that's – but he said everything that happened happened after that. So it's just a mismatch. Well, no. I mean, the first thing he claimed happened was in February of 1992. So that was actually before. But he says he was in India then. No, he says he came in December of 1991. That's when he says he was there. Right? Right. But we also have questions about when was the time period that he went back. It wasn't just when he came here. It was like, was he back there during the time periods that he claimed these events happened? And how did the BIA – let's leave aside the IJ, because the BIA only relied on four discrepancies, as I understand it. And none of them have to do with that question. I mean, to be frank, I think there's a whole story here that could have been found, but it wasn't, which is – my suspicion is that he was saying he was here in the 80s because he had somehow said so in order to get a temporary amnesty, and that's why this whole weird story came out. But the way the – what the BIA actually found just seems completely – it's having a hard time getting it right. And that's why I'm saying it was all directed at showing that he was in India in the 80s, but it wasn't directed at showing that he wasn't in India in the 90s. Well, he claimed in his initial application that he – I think it was in his initial   application that he didn't comment on, let's see, 96, but that's an inconsistency as well. So, I mean, the ultimate sentence in the BIA opinion is, moreover, in light of the complete description of the Respondent's whereabouts between 1981 and May of 1992, the immigration judge actually – reasonably questions whether he was actually in India in February of 1992, January of 1994, and January of 1996. Why? They're just – it's just a mismatch. Well, there is evidence in the record – I mean, he claimed in his application that he came in 96. And so – 1996? 1996. Well, even that is not relied upon as a reason here. That's not one of the – one of the discrepancies that's relied upon. Well, he – okay, I'm sorry. Page 87 of the record, he lists that he was living in Punjab from 1954 to March of 1996. Okay. So then he wasn't in India then. So what's the problem? I mean, that's what's so weird about this. Everybody seems to be going at course purposes to each other, because he should want himself in India more, and they seem to want him in India, but they seem to want – the BIA seems to be wanting to prove also that he was in India more than he said he was, not less. Well, and – but it's – I mean, if he's lying about the one thing, about whether he made these trips back and forth or not, then under the Ninth Circuit case law, then he could be lying about the other thing as well. That ultimately has to be your position, right? That simply because he was lying about this fairly, you know, non-responsive matter, he was lying about other things. Well, and it's not just that. I mean, he has the burden of proof. He did not put in any affidavits that show in detail what he was – what he claims to be persecuted. There was one affidavit saying that he was beaten, but there was no detail. But that's not what they found. I mean, the BIA, I suppose, could have concluded that he didn't meet his burden of proof or that he wasn't actually persecuted during those periods, but none of the discrepancies they rely on have anything to do with his stories of persecution, right? None of them do. No, they do talk about affidavits on page 5 of the board decision, and it's saying while it afforded some evidentiary weight, we agree they alone are not sufficient to satisfy his burden of proof. The affidavits do not set forth specific dates on which he was arrested. And while another affidavit states that the police beat and tortured him, it was not detailed enough to provide this court an out-of-court declarant. So it was discussed and considered by the board. And when you have these other things where the board doesn't know what to believe about the Petitioner because he's given inconsistent testimony regarding, you know, the dates of his children, when he came back and forth, you know, where he was living, what name he was using to travel, and the lack of corroboration on his back and forth, and lack of corroboration about his claims of what happened to him in India, I think there's more than enough evidence to support that. This case is not a real IDIAC case, right? It's not a real IDIAC case. No, it's pre-real IDIAC. And so you really only need, under the prior law, you only need one solid reason. All right. What solid reason should we rely on? As, again, I said, he's got a number of inconsistencies that are enough to raise doubt. But none of them go to the, quote, heart of the claim in the sense of the prior real IDIAC, pre-real IDIAC, because they all have to do with when he wasn't in India and not when he was in India. Well, there were no, I think there was also conflicting testimony about when he traveled there. Let's see. I'm going by what the BIA. Yeah, no, I know. I'm looking. I'm trying to, sorry. Well, again, even if you put the dates aside, you also have the lack of weight to be considered in the, no, I'm sorry, no corroboration or not sufficient corroboration as to what the treatment that he received or even that the events occurred in India. On page 5, the Board found that that wasn't sufficient. So I think when you have, you know the But that's only if one first finds him not credible. Furthermore, we find that the Respondent has not provided sufficient evidence to establish eligibility for relief in the absence of credible testimony. Right. So first you have to find him not credible. And I'm saying that on pre-Real ID Act law, I don't know how you get there. Well, you know, he claimed that he joined the, I'm sorry, the Cali-Dalman Party in 1989. But he did say he was there. That was one big mistake in his opinion. He never said he was there when he joined. They say that he said he was there, but he didn't say that. He claimed he was very active in it. So I mean, how he can be active in his community if he's not there, I don't know. Okay. Your time is up. Thank you very much. Thank you. If Petitioners to be believed and testified credibly as to his claim of persecution, and that would involve three arrests in 1992, 1994, and 1996, he doesn't Well, they didn't find that he was credible as to that. They just made no findings as to it. Yes. And I believe that the adverse credibility finding related to collateral impeachment at best, but it's not even impeachment, Your Honor, if he wasn't questioned or confronted with the three bases that the I.J. laid out for her adverse credibility finding. He wasn't questioned about the children's dates of birth or the he was questioned somewhat about the passport, but specifically about the dates of birth. So you can't really consider that even impeachment. But if it is considered impeachment, it's collateral at best. It doesn't go to the heart of the claim. Sufficiency of the affidavits, even if they're required, the I.J. and the Board seemed to ignore AR-341 and 343, where two affiants provided corroboration that, in fact, Petitioner was arrested, the dates of arrest, and the fact that he suffered mistreatment. Okay. Thank you very much. Thank you. The case of Singh v. Holder is submitted. We will go to the next case, which is Ocampo.
judges: Lynn, Berzon, Rawlinson